DaNieu, Judge.
 

 After stating the case, proceeded to deliver the opinion of the court.
 

 After the credit of the witness,
 
 Turner,
 
 was attacked, it became material and necessary for the plaintiff to show that there was an intimacy between the defendant and the runaway slave
 
 Jack,
 
 about the time deposed to by
 
 Turner,
 
 in order that the jury might draw the inference that such á conversation had taken place as that stated by
 
 Turner.
 
 For this purpose the witnesses
 
 Bradshaw, Jones, Watts
 
 and T/io mas were introduced. I think
 
 Bradshaw’s
 
 evidence was admissible for the purpose of introducing and explaining the conduct and behaviour of the defendant, when the charge was made that he had carried off
 
 Barton’s
 
 slave, arid also for the purpose of proving his answer on that occasion. (1
 
 Stark
 
 50.)
 

 The testimony of
 
 Jones
 
 offered to show that the defendant used just such language as might be expected of a man who was harboring a runaway. The words spoken and manner of speaking them to
 
 Jones
 
 by the defendant, was a circumstance which the plaintiff might
 
 *242
 
 link with other circumstances to show an intimacy between
 
 Jack
 
 and the defendant.
 

 A party offering the deposition of a witness examined in the causo, for the purpose of contradicting him, will not bo permitted to read part only of the deposition,but ifhointroduces it, must read the whole.
 

 Watts
 
 proved that the defendant admitted that he had purchased
 
 Jack
 
 for the price of
 
 $ ZOO,
 
 in January, 1829. His evidence wentto support
 
 Turner, who
 
 had deposed that in the conversation which he overheard with
 
 Jack
 
 and the defendant, the latter said he would buy him out of the woods.
 

 The evidence of
 
 Thomas
 
 was material to show an intimacy between
 
 Jack
 
 and the defendant. The night the party went to apprehend
 
 Jack,
 
 the defendant left the party and again rejoined them, when he told the company that lie had seen
 
 Jack,
 
 and that they had agreed to meet •at the school house, where he had promised to pay him some money. At 10 o’clock the defendant,
 
 Tliornas
 
 and
 
 Jack
 
 came to the school house, when after some management,
 
 Jack
 
 was arrested by the rest of the company. I think this evidence was in point to prove an intimacy.
 

 2dly. The refusal by the court to permit
 
 McDaniel
 
 to be re-examined, was no ground fora new trial. It was discretionary in the court to permit it or not, and the defendant’s counsel now abandons this point in his case.
 

 Sdly. Did the court err in refusing to let the deposition which Turner-had given, be read in the manner requested by the defendant’s counsel ? The deposition was no evidence as to the main question in the cause, viz : the conversion of the property, because
 
 Turner
 
 was there to-testify orally, nor could the plaintiff have read that part of it in chief, if
 
 Turner
 
 had not been present, which relates to what the slave
 
 Jack
 
 informed the witness the defendant had done. But when the defendant offered it as a written declaration made by the witness upon the same subject matter, for the limited purpose of impeaching the witness, by showing a material variance between the written
 
 deposition
 
 and his evidence given on the trial; then all the writing, which would have had a tendency to show that the witness was consistent or inconsistent, should have been read and not parts of it._ The deposition has been sent
 
 up
 
 as apart of the case; it
 
 *243
 
 appears that
 
 Turner
 
 was consistent as to the time he first
 
 saw Jack,
 
 and the conversation he then had with him,— _ lie is consistent as to the tunc that he,
 
 Stewart
 
 and
 
 Brad-sluiw
 
 went to the out house of the defendant, and the conversation that then took place between
 
 Jack
 
 and the defendant. The only apparent inconsistency in the- two statements, is in the inducement which prompted him to go at the time he did to the out house of the defendant. In his statement before the court, he said that it was from information imparted to him when he first saw
 
 Jack,
 
 (viz. September, 1827,) he was induced to go with
 
 Stewart
 
 and
 
 Bradshaw
 
 a certain night in December 1827 to the house of the defendant, to observe an interview between him and
 
 Jack.
 

 In his deposition, ( which was taken when he was ves ry sick,) he stated that lie saw
 
 Jack
 
 in the fall of the year 1827 — that he was then a runaway — that he made certain disclosures to him, relative to the conduct of the defendant, in sending away the slave of the plaintiff, and said that a negro by the name of
 
 Joe,
 
 could give information, which would detect the defendant at any time.—
 
 Turner
 
 tells
 
 Bradshaw
 
 and
 
 Stewart
 
 what he had learned, and it was agreed between them, that they would find out if there was any truth in the account given by Jack. After they had formed that determination,
 
 Stewart
 
 told the witness, that
 
 Thompson’s Larry
 
 had informed said
 
 Stewart,
 
 that the defendant and
 
 Jack
 
 could be caught at night, at a little out-liouse in the defendant’s fields — that in consequence of this information from-
 
 Thompson’s
 
 negro, they then agreed to go to said house at the time specified, and did go. When they got there, he saw and heard, what he had related in court. It must be vememr bered, that the deposition of the witness was taken when he was. very sick, and, in the nature of things, it cannot be expectedj that the same degree of accuracy as to colr lateral circumstances, will be observed, as when the witness was in full health, and in the full possession of his mental faculties. The information which the witness got from
 
 Stewart,
 
 ( as stated.in the deposition,) was the.
 
 immediate
 
 cause of his going to t|ie out-house of fhe dq-
 
 *244
 
 fondant, at the time he did. Yet, from reading that dc-position, it appears to me very certain, that the
 
 mediate
 
 caHge was what
 
 Jack
 
 had disclosed to him in 1827. I think, all the deposition was pertinent to the ascertainment of the limited fact, whether
 
 Turner
 
 had made a material variance in his different statements of the same case, or not. The defendant, therefore, had no right to read a part only.
 

 The deposition ef a woman^far nancean™ who, it was proved on hahly just been de within’ iheTphit of the act of 1803, and is admissible,
 

 The plaintiff offered to read the deposition of
 
 Betsey jjra%ier.
 
 It had been taken
 
 de bene esse,
 
 and to lay a foundation for reading it, he proved by her brother that ]10 Saw her the day before ho set out to court — that she was lar advanced m pregnancy, and at the time he was sPea^i11S> he supposed it probable that she had been de-Iiveml. The reading of the deposition was objected to, hut admitted by the court. Was there any error in this? The defendant contends, that the cause shewn would have been very good for a continuance of the suit; but it was not sufficient to authorize the reading the deposition. The act of 1777 declares, that where the witness shall be under the necessity of leaving the State, before such cause is to be tried, or before the cause is at issue, the deposition may be taken and received as legal evidence. The act of 1803, authorizes the depositions of witnesses, who are in a dangerous state of health, or about to leave the State, to be taken and received as legal evidence. The object of these acts, was both to expedite, and insure, the correct administration of justice. The reception of the deposition in evidence, was in conformity to the general practice, and is certainly within the-spirit of the act of 1803. I perceive no grounds for a new trial, on any of the points taken by the defendant.
 

 Per Curiam — -Judgment affirmed.